In the Matter of CHARLES BARRY et al., Petitioners, against ALGER B. CHAPMAN et al., Constituting the State Tax Commission, et al., Defendants, and MERWIN WEBSTER et al., Interveners, Defendants.

Supreme Court, Special Term, Albany County, August 25, 1947.

*H. Eliot Kaplan* for petitioners.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown* and *Kent H. Brown* of counsel), for defendants.

*Robert H. Schaffer* and *Leo Brown* for interveners, defendants.

BOOKSTEIN, J. This is a proceeding under article 78 of the Civil Practice Act in the nature of mandamus instituted by some seventeen temporary civil service employees of the State of New York against the State Tax Commission and the State Civil Service Commission. The three individual defendants named as interveners-defendants are persons who would be affected by the determination of the matter and accordingly have intervened.

The petition alleges that the petitioners are temporary motor vehicle license examiners employed by the Department of Taxation and Finance, Motor Vehicle Bureau; that each has qualified for the position pursuant to competitive civil service examination; that each is a disabled veteran of World War II with disabilities rated by the United States veterans administration, at percentages ranging from 10% to 50% respectively. They complain that the defendants comprising the State Civil Service Commission and the State Tax Commission recently certified and appointed a number of persons, including the impleaded defendants, to permanent positions as motor vehicle license examiners and in so doing gave preferences to such persons, including the intervening defendants, as disabled veterans; that among the group of disabled veterans permanently appointed, were several with disabilities rated by the United States Veterans' Administration as " zero percent."

Petitioners further make the following allegation: " 5. The alleged zero percent disability does not constitute such persons disabled veterans within the meaning of the Constitution of the State of New York."

They further complain that, as " genuinely " disabled veterans, they have thus been deprived of their right to preference in certification for appointment as provided for by section 6 of article V of the New York State Constitution in that such " zero percent " disabled veterans have been preferred over them.

Petitioners in this proceeding seek an order directing the defendants State Tax Commission and State Civil Service Commission to cancel the preferential certifications and appointments of all " zero percent " disabled veterans and to certify and appoint the petitioners as permanent motor vehicle license examiners in accordance with their constitutional right to preference over (1) nondisabled veterans, and (2) nonveterans.

All of the defendants; including the interveners, object, in point of law, to the petition, under section 1293 of the Civil Practice Act, on the ground that it does not state facts sufficient to entitle the petitioners to the relief demanded, or any other relief, and move for an order dismissing the petition.

The three civil service employees of the State, now holding permanent positions as motor vehicle license examiners, appointed thereto as disabled veterans with disabilities rated by the United States Veterans' Administration as " zero percent " and who obtained higher ratings on the civil service competitive examination, than the petitioners herein, are the interveners-defendants in this proceeding.

The petition and the motion to dismiss raise only one issue, viz.: If in connection with an application for preferential appointment in the civil service as a disabled veteran, in which the applicant meets all of the qualifications for such a preference prescribed by the Constitution and the Civil Service Law, the United States Veterans' Administration also certifies the percentage of war service connected disability to be " zero percent," must such application for preferential appointment be denied as a matter of law?

For present purposes, it must be assumed that the applicants for preference whose applications were granted met all of the constitutional provisions and conditions precedent to the granting of such preference. It must, therefore, be assumed that the United States Veterans' Administration furnished to the State Civil Service Commission certificates which affirmatively stated (1) that in the instance of each person whose appointment is attacked herein, the applicant sustained a war service connected disability and (2) that the disability continued to exist at the time of his or her application for appointment or promotion. The petition does not allege that in making the appointments complained of, the defendants Civil Service Commission and State Tax Commission were not furnished with such certificates of the United States Veterans' Administration, certifying to the war service connected disability and to the existence thereof at the time of the application for appointment.

True, the petition does charge that the certificates so furnished rated the disability as " zero percent " and this must also be assumed to be true for present purposes, since the motion to dismiss as a matter of law, raises no issue with respect to such allegation.

Petitioners' position apparently is that a certification by the United States Veterans' Administration of a " zero percent " disability does not constitute the person with such a certificate a disabled veteran within the meaning of the Constitution and Civil Service Law of the State of New York, regardless of the fact that the United States Veterans' Administration also certifies that such person has a war service connected disability and that such disability existed at the time of his or her application for appointment or promotion.

The constitutional provision in question is section 6 of article V of the State Constitution, adopted November 6, 1945, effective January 1, 1946, and, as far as pertinent, provides as follows: " * * * any member of the armed forces of the United States who served therein in time of war, who is a citizen and resident of this state and was a resident at the time of his or her entrance into the armed forces of the United States and was honorably discharged or released under honorable circumstances from such service, *and who was disabled therein to an extent certified by the United States veterans administration, and whose disability is certified by the United States veterans administration to be in existence at the time of his or her application for appointment or promotion, shall be entitled to preference* and shall be appointed or promoted before any other appointments or promotions are made, without regard to his or her standing on any list from which such appointment or promotion may be made." (Emphasis supplied).

Section 21 of the Civil Service Law enacted to enforce the constitutional provision aforesaid and pursuant to its command, so far as pertinent, reads as follows:

" 2. Definitions. * * *

" (b) The term ' disabled veteran ' means a veteran who has a disability which is certified by the United States veterans' administration to have been incurred in time of war and to be in existence at the time of application for appointment or promotion or at the time of retention, as the case may be.

" 3. Preference in appointment and promotion. (a) The names of all persons who have passed examinations for appointment or promotion to positions in the civil service for which eligible lists are established shall be certified in the following order:

" (1) Disabled veterans in the order of their respective ratings in the examinations;

" (2) Non-disabled veterans in the order of their respective ratings in the examination;

" (3) Non-veterans in the order of their respective ratings in the examination."

Act of March 20, 1933 (U. S. Code, tit. 38, § 700 *et seq.*, as amd.), provides among other things, for the payment of compensation for disabilities resulting from injury received in line of duty in war time service.

Executive Order No. 6157, June 6, 1933 (Code of Fed. Reg., tit. 38, § 35.03; Veterans' Regulation No. 3 [a]) authorizes the Administrator of Veterans' Affairs *to adopt a schedule of ratings of reductions in earning capacity from specific injuries; that the ratings shall be based upon the average impairments of earning capacity;* that the schedule shall be constructed so as to provide *for ten grades of disability and no more, upon which payments of pension shall be based,* the minimum being 10% and the maximum being 100%.

Regulations promulgated by the Veterans' Administrator (set forth in Code of Fed. Reg., tit. 38, § 2.1158, amd. Sept. 17, 1946; 11 Federal Register 10829) provides: " (b) For the purposes of the 1933 and *1945* schedules, a disability under any diagnostic classification which does not meet the minimum rating schedule standard under that classification will be rated as no percent, *except for purposes of Civil Service preference, in which event an evaluation of less than ten percent may be made.*" (1946 amendment emphasized.)

Among other contentions made by the petitioners is one that disabilities which do not impair earning capacity to the extent warranting the payment of a pension by the United States Government (10% minimum rating under the schedule adopted for that purpose, under the applicable Federal statutes, orders and regulations above set forth) are not disabilities within the meaning of our State Constitution and Civil Service Law, in providing for preferential civil service appointments.

It seems to this court that that contention was fully and completely disposed of adversely to petitioners by the Court of Appeals in the case of *Matter of Potts* v. *Kaplan* (264 N. Y. 110).

That court then had before it the consideration of the meaning of the words " disabled " and " disability " as used in section 21 of the Civil Service Law, enacted pursuant to section 6 of article V of the Constitution as it existed at that time.

One of the questions certified to the Court of Appeals in that case was as follows: " (1) Should the word ' disability ' as used in section 21 of the Civil Service Law, be interpreted as meaning a disability that materially impairs the applicant's earning capacity? "

The Court of Appeals answered that question in the negative and said at page 117: " *The purpose of the constitutional amendment and of the statute enacted in pursuance of it does not, according to our interpretation, refer to disabilities which impair earning capacity.* Rather, as we think, it points toward a reward for one who had, even in a slight degree, sustained in war service some physical depreciation which the Federal government had recognized as such and whose impaired physique due to such recognized illness, disease or wound has continued to exist." (Emphasis supplied.)

The words " disabled " and " disability " are used in present section 6 of article V of the State Constitution and in present section 21 of the Civil Service Law in like manner as those words were employed in section 6 of Article V of the State Constitution and section 21 of the Civil Service Law as they existed at the time of the decision of the Court of Appeals in the *Potts* case (*supra*).

It necessarily follows that that case completely disposes of the contention advanced by petitioners. In other words, the " zero disability " rating is a rating which refers exclusively to a rating dealing with the payment of benefits by the Federal Government *for impaired earning capacity* under the statutes, regulations and orders heretofore referred to. The " zero disability " rating has no relation whatsoever to the question of civil service preferences under the State Constitution and Civil Service Law.

While it is of course not decisive, it is at least persuasive that apparently a " zero disability " rating, does not preclude preference even in the Federal civil service. (See U. S. Code, tit. 5, § 851.)

It is of no consequence that pragmatically the term " zero disability " may well mean no disability. The term must be viewed in its technical sense.

Petitioners claim that the decision in *Matter of Winternitz* v. *Morton* (Sup. Ct., N. Y. Co., June 13, 1947, STEUER, J., affd. 272 App. Div. 339, affd. 297 N. Y. 541) holds to the contrary.

This court cannot agree with that contention.

This court has examined the record on appeal in the *Winternitz* case (*supra*).

Photostatic copies of the eight certificates of the Veterans' Administration there involved are a part of the record on appeal and each indicates that the veteran incurred a war service connected disability and that the percentage thereof was 0%. *There was no statement in the certificates certifying to the present existence of the war incurred disability.*

The Municipal Civil Service Commission of the City of New York, on the basis of such certificates and nothing else, gave preference to the veterans involved. The record in that case contains a letter dated May 23, 1947, from the Veterans' Administration. That letter indicated that for purposes of payment of compensation by the United States Government for war service incurred disability a minimum rating of 10% was necessary; that any disability less than 10% is rated by the Veterans' Administration at 0%. The letter further indicated that such a rating of 0% *standing alone* is not conclusive as to the present existence of a war service connected disability. Such a rating does indicate that a disability was incurred, but such rating, standing alone, may indicate (a) that the disability no longer exists or (b) that it does exist to a degree less than 10%.

Accordingly the Special Term voided the preferences. The Appellate Division unanimously affirmed the Special Term with an opinion by Justice VAN VOORHIS, and the Court of Appeals unanimously affirmed the lower courts, without opinion.

Regarding the force and effect to be given to certificates from the Veterans' Administration, the Appellate Division in the *Winternitz* case (*supra*, p. 340) stated: " The certificate of the Veterans' Administration is conclusive on the court concerning the nature and extent of the alleged disability, and of the fact that it was sustained while in the armed forces of the United States in time of war (*Matter of Potts* v. *Kaplan*, 264 N. Y. 110). *Unlike the corresponding 1929 Constitutional Amendment, the 1946 Amendment also renders the Veterans' Administration's determination final concerning whether the disability continued to be in existence at the time of application for appointment or promotion.*" (Emphasis supplied.)

Nevertheless, the court held in the *Winternitz* case (*supra*) that the order of the Special Term should be affirmed for the reason that the certificates of the Veterans' Administration adduced to support the preferences in that case did not indicate that the persons involved suffered from disabilities at the time of the application for appointment or promotion. The court, in its opinion, quoted the letter from the Veterans' Administra-

tion, explaining the meaning of 0%, and concluded therefrom that the rating of 0% *without more* was of no probative force to establish that war service disabilities were in existence at the time of the applications for the appointment or promotion. Further, the court held that particular certificates furnished by the Veterans' Administration in that case did not indicate that the Veterans' Administration made any certification as to the existence of the war incurred disabilities at the time of the appointments.

There is nothing in the opinion of the Appellate Division in the *Winternitz* case (*supra*) to support the contention that a 10% disability rating is necessary to entitle a veteran to preferential appointment under our present constitutional provision and Civil Service Law or that a 0% rating automatically disqualifies a veteran or that a " zero percent " disability rating, *ipso facto,* bars a disabled veteran from civil service preference.

It is clear from what we have already seen that the term " 0% disability " is a technical term employed by the Veterans' Administration and defines veterans who have sustained a war service connected disability, whose present rating, *so far as the impairment of earnings is concerned,* is anything from less than 10% to actual mathematical zero. Accordingly, a 0% disability rating does not necessarily mean that such a war incurred disability does not continue to exist at all. If we were simply to substitute for the term " zero disability," the words " non-compensable disability," the apparent confusion caused by the term " zero disability " would disappear.

If the Veterans' Administration certifies that a veteran has a war service connected disability and it further certifies that it continues to exist, and also further certifies that the rating is 0% disability, there is apparent conflict between its certification that the disability continues to exist and that yet the disability is 0%. At least there is that apparent conflict, pragmatically. Viewed from the standpoint of what the Veterans' Administration itself says is the meaning of the words " zero disability," a statement borne out by the statute, regulation and Executive Order, heretofore referred to, then such a certificate, of necessity, means that the veteran has sustained a war service connected disability and that such war service connected disability continues to exist but that *for the purpose of compensation* under the Federal statute, the disability is less than 10%. In such a case, under the doctrine of the *Potts* case (264 N. Y. 110, *supra*) since the percentage of impairment of the earning capacity has absolutely nothing to do with the

question of disability as employed in section 21 of the Civil Service Law, the right of such a veteran to preference under that law is not affected by such a rating. Since in the *Winternitz* case (*supra*) the certificates of the Veterans' Administration certified to a war connected service disability having been incurred and gave its rating as 0% disability but since those certificates failed to certify the continued existence of the disabilities, the holding in that case simply means that the veterans who obtained the preference had not met the conditions required by our constitutional provision and section 21 of the Civil Service Law.

In the instant case, there is no allegation by the petitioners to the effect that the veterans who were given preference under our Civil Service Law did not sustain war connected service disability; nor is there any allegation that such disability so incurred did not continue to exist at time of application for preference; it must be presumed for the purposes of this motion that the Civil Service Commission had before it certificates certifying *both* to the incurring of the disability and to its then present existence. It must be likewise assumed that the rating of such presently existing disability is 0%, such allegation of the petition being undenied. Viewed in that light, the petition seeks relief on the following basis: (1) That the preferences granted were granted to veterans on the basis of certificates from the Veterans' Administration to the effect that the veterans incurred war service connected disabilities, (2) that such war service connected disabilities continued to exist at the time the preferences were granted and (3) that the ratings of such disabilities were 0%; and that, in any case, where the rating is 0%, the veteran is not entitled to the preference granted by section 21 of the Civil Service Law.

The 1945 constitutional amendment contains no qualification whatsoever, pertaining to the degree of disability necessary to entitle an applicant to preference as a disabled veteran, and it was adopted after the decision of the Court of Appeals in *Matter of Potts* v. *Kaplan* (*supra*). This can only mean that the Legislature and the people of this State intended to deprive the civil service appointing authorities of this State of any prerogatives they may have had under the 1929 amendment in this respect. Civil service authorities may no longer deny preference to some disabled veterans by resorting to restrictive definitions of the word " disability." The people of this State have bestowed upon disabled veterans the privilege of preference without discrimination regardless of the degree, nature or

extent of their disabilities. If the United States Veterans' Administration certifies to the incurring of a disability and to its continued existence, such certificate cannot be rebutted and the preference must be granted whether the disability is considered serious or trivial.

Whether that policy was wise or unwise, whether instead veterans with serious disabilities should have been accorded preference over those with slight disabilities, whether among disabled war veterans there should have been priorities based on different degrees of disabilities, are not questions for this court. All of those matters were settled and foreclosed by the terms of the constitutional amendment adopted in 1945 and by section 21 of the Civil Service Law, enacted pursuant thereto.

For the purpose of the execution of the Civil Service Law of this State, the information as to the percentage rating of disability is not even necessary or required, because under our constitutional provision and Civil Service Law, it is of no concern to the appointing authorities whether the disability involved *is recognized by the United States Government as entitling the applicant to compensation or not.* It is of no moment whether the disability involves any impairment or reduction of earning capacity. That test or standard for determining whether or not a disability existed was considered and denied by the Court of Appeals under the former constitutional provision which left the evaluation of the degree of existing injury open for determination by the appointing authorities or the courts of this State (*Matter of Potts* v. *Kaplan, supra*). It is of no concern under the present provision.

Our constitutional provision fixes no minimum degree of disability and makes no distinction between major and minor disability. Under our constitutional and statutory scheme for preferences for veterans in our Civil Service, we have given a first preference to disabled veterans, a second preference to nondisabled veterans; and no preference to nonveterans. Within the preferred groups themselves, however, and as among themselves there are no priorities. Thus, as to the second class of preferences, that is, nondisabled veterans, the veteran now has a preference if he served one day within the continental borders of the United States or several years overseas under fire. Either way, the same preference is awarded; no more, no less. The same thing is true of the first preference group, that is, the disabled veterans group. There are no priorities among that group themselves dependent upon the degree of disability. In other words, we have one class which had the

first preference, that is the class of disabled veterans; the second class, which has the next preference, that is the class of nondisabled veterans. In neither group are there any priorities among themselves. Disability is rewarded in the first case; service is rewarded in the second. In neither case is there any distinction made in the award of the preference between varying degrees or extent of disability or service. What the *Winternitz* case (*supra*) pronounces is that the certificate of the Veterans' Administration *must show a war service connected disability existing at the time of application for appointment or promotion,* in order that a veteran be entitled to the preference accorded by the Constitution and the Civil Service Law. That case does not determine adversely the claim to preference that has been allowed to the impleaded defendants herein.

The vital holding of the *Potts* case (*supra,* p. 117) is found in the significant declaration of the court that the constitutional preference was intended to reward " one who had, even in a slight degree, sustained in war service some physical depreciation which the Federal government had recognized as such and whose impaired physique due to such recognized illness, disease or wound has continued to exist ", and in its negation of the proposition that the disability has to be one which impairs earning capacity. The " 0% disability " rating referred to is merely a rating of impaired earning capacity, and may mean anything from no impaired earning capacity up to something less than 10% of impaired earning capacity. This impaired earning capacity is not the test of preference under our Constitution and Civil Service Law but rather the test is the incurring of a war service connected disability and the continued existence thereof. A disabled veteran is entitled to preference whether such continued existing war service connected disability impairs his earning capacity to an extent less than 10% or even not at all.

As we have seen, there is no allegation in this case of the failure on the part of the Veterans' Administration to certify that the impleaded defendants herein sustained war service disabilities and that the same continued in existence at the time of their appointment.

Since the petition in this case rests solely upon the allegation that the disabled veterans who obtained preferences had only a " 0% disability " rating from the Veterans' Administration, and fails to allege that there was no certification by said administration of the incurring and continued existence of a war service connected disability, it fails to state a cause of action.

Accordingly, the objection in point of law to the petition herein on the ground that it does not state facts sufficient to entitle the petitioners to the relief sought, is sustained, and the proceeding dismissed.

Submit order accordingly.